FRANCES ALBRITTON, Plaintiff v. HARRY R. ALBRITTON, Defendant

No. 915DC1246

(Filed 16 February 1993)

**1. Divorce and Separation § 142 (NCI4th)— equitable distribution—pension benefit—failure to determine value**

The trial court's failure in an equitable distribution action to put a specific value on defendant's pension plan was not error where it was plaintiff-appellant who failed to provide the trial court with the necessary information. Plaintiff, as the party claiming an interest in the pension plan, had the burden of proof as to the value of the pension plan on the date of the parties' separation. The trial court did the best it could with the information available.

**Am Jur 2d, Divorce and Separation §§ 870, 905.**

**Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.**

**2. Divorce and Separation § 144 (NCI4th)— equitable distribution—unequal division of marital property—no abuse of discretion**

The trial court did not abuse its discretion in an equitable distribution action by making an unequal division of the marital property where the court considered all of the factors listed in N.C.G.S. § 50-20(c), but gave particular weight to factors 1, 3, 11a, and 12. Defendant's declining health and inability to work were important to the court, as was the court's feeling that plaintiff had secreted funds, attempted to devalue the marital estate, and was less than truthful in much of her testimony.

**Am Jur 2d, Divorce and Separation §§ 930 et seq.**

**Divorce: excessiveness or adequacy of trial court's property award—modern cases. 56 ALR4th 12.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

**ALBRITTON v. ALBRITTON**

[109 N.C. App. 36 (1993)]

3. **Divorce and Separation § 158 (NCI4th)— equitable distribution — distributional factors — defendant ill and unable to work — plaintiff hiding and secreting marital assets — evidence sufficient**

The trial court did not err in an equitable distribution action by holding that defendant was ill and unable to work and that plaintiff had hidden and secreted marital assets where there was competent evidence supporting those findings. Defendant testified that he suffered from dizzy spells and also had recurring pain in his leg and side, defendant was under medical evaluation and awaiting test results at the time of the hearing, and defendant's daughter corroborated his testimony. Plaintiff initially testified that she did not use any of her own money in the purchase of her post-marital home, and later explained that she had been confused by the earlier questions and that she had actually paid the amount needed to purchase the home from her checking account, which she closed before separation, a former IRA account, and a loan from her sister. There were other contradictions in the record too numerous to mention.

**Am Jur 2d, Divorce and Separation §§ 930 et seq.**

**Divorce: excessiveness or adequacy of trial court's property award — modern cases. 56 ALR4th 12.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

4. **Appeal and Error § 147 (NCI4th)— equitable distribution — exhibits — failure to object**

Plaintiff's argument that defendant did not properly introduce exhibits in an equitable distribution action was not preserved for appeal where plaintiff made no objection at trial. N.C. R. App. P. 10(b).

**Am Jur 2d, Appeal and Error § 553.**

Appeal by plaintiff from judgment entered on 8 April 1991 by Judge Charles E. Rice III in New Hanover County District Court. Heard in the Court of Appeals 12 November 1992.

*Charleene Wilson for Plaintiff-Appellant.*

*Carlton S. Prickett, Jr. and Nora Henry Hargrove for Defendant-Appellee.*

LEWIS, Judge.

The issues presented by this appeal arise from an action for absolute divorce and equitable distribution initiated by Frances Albritton ("plaintiff") against her husband, Harry R. Albritton ("defendant"). Plaintiff and defendant were married 27 August 1949 and lived together for almost forty years until the date of their separation on 14 June 1988. The parties were granted an absolute divorce by the trial court on 28 July 1989, leaving only the issue of equitable distribution to be decided.

During the 5 March 1990 session of Civil District Court, a hearing was held on the question of equitable distribution. The evidence presented tended to show that at the time of the hearing, plaintiff was 61 years old and defendant was 62 years old. During the marriage, defendant had been employed by Southern Bell Telephone Company (now Bell South) from February of 1951, until his retirement in February, 1985. Upon defendant's retirement from Southern Bell, he began receiving a monthly payment from a pension plan that had been funded by contributions from Southern Bell while he was employed. At the time the parties separated in June of 1988, defendant's pension plan had a gross value of $1,341 per month, of which defendant received a net of $1,093. It is this pension plan that is the source of the dispute between the parties.

After defendant's retirement from Southern Bell, he worked on a part-time basis for R & E Electronics, but due to declining health, defendant had only been able to work a total of three days in the months preceding the hearing. Defendant's gross income from R & E Electronics for the taxable year 1989 was only $16,000. The Southern Bell pension plan therefore represented his only source of income.

In contrast, the trial court found that plaintiff was in relatively good health, with the exception of having had heart surgery in 1984, and that she was gainfully employed as a nurse at New Hanover Memorial Hospital in Wilmington, with an income of $33,666 in 1989.

The evidence presented at the hearing also showed that plaintiff had hidden marital property. The trial court noted in its findings of fact that plaintiff had a checking account registered in her name alone. On the day prior to the parties' separation plaintiff withdrew

the entire remaining balance of $6,802 from the account. In addition, evidence was presented that shortly after the parties' separation, plaintiff purchased a house in Wilmington, North Carolina. Although, the original "Offer to Purchase and Contract" was submitted by plaintiff, she transferred her interest in the "Offer to Purchase and Contract" to her sister and brother-in-law, Peggy Smith and Lloyd Smith, (the "Smiths"). Thereafter, on 29 August 1988, plaintiff and not the Smiths submitted a "Mortgage Loan Application" with which to purchase the house. However, at the closing, a mortgage was given to the Smiths for $39,132, leaving a difference of $11,658 from the purchase price of $50,790. After the closing on the house, it was plaintiff, and not the Smiths, who took up residence in the house and began paying "rent" to the Smiths in an amount almost identical to the monthly mortgage payment. On 29 December 1989, after plaintiff had been granted an absolute divorce, the Smiths transferred title to the property to plaintiff. At the hearing, plaintiff testified that her sister had given her the property in exchange for her assumption of the underlying debt.

The trial court, upon reviewing this peculiar transaction, concluded that the equity in the property, as well as the closing costs, were the result of plaintiff having additional cash monies at the time of the separation. As a result, the trial court concluded that the additional cash was a marital asset with a value of at least $12,000 as of the date of separation.

Based on all the evidence presented, the trial court concluded that an unequal division of the marital property in favor of defendant would be equitable. In reaching this conclusion, the trial court gave particular weight to factors 1, 3, 11a and 12 listed in N.C.G.S. § 50-20(c). Using these factors the trial court awarded an equal division of all marital assets except for defendant's pension plan which the trial court awarded entirely to defendant. Plaintiff has appealed from the trial court's division of the marital property and has assigned various errors to the distribution process.

I.

The rules regarding equitable distribution are well established. In making an equitable distribution of marital property, the trial court follows a three step process: 1) to determine which property is marital property, 2) to calculate the net value of the property, and 3) to distribute the property in an equitable manner. *Beightol v. Beightol*, 90 N.C. App. 58, 367 S.E.2d 347, *disc. rev. denied*,

323 N.C. 171, 373 S.E.2d 104 (1988). Plaintiff has not excepted to the trial court's classification of property, but she has taken exception to the valuation of defendant's pension plan and the distribution of the marital property.

[1]  Plaintiff's first assignment of error actually raises two issues; the first of which is the trial court's failure to determine the present value of defendant's pension plan. Although, we too are concerned that the trial court did not place a specific present value on defendant's pension plan, we find that the trial court's omission did not prejudice plaintiff and thus does not amount to a reversible error.

In its order signed 8 April 1991, the trial court specifically stated: "There was insufficient evidence to enable the Court to establish the present value of this pension at the time of the parties' separation." In its brief, however, plaintiff contends that the trial court should have used either the present discount method or the fixed percentage method to have arrived at a proper valuation of the pension plan. Plaintiff further argued that under the circumstances the present discount method was more appropriate since payment from defendant's pension had already begun and both parties were only a year apart in age. In order for the trial court to have used the present discount method, it was necessary for the trial court to have certain actuarial information as well as other specifics about the plan. However, plaintiff conceded in her brief that neither she nor defendant produced any actuarial evidence. To get around this deficiency, plaintiff contends that the trial court should have taken judicial notice of any "number of respected actuarial source books."

Judicial notice is governed by Rule 201 of the North Carolina Rules of Evidence. Specifically, Rule 201(c) provides that a court *may* take judicial notice of a fact whether requested or not. N.C.G.S. § 8C, Rule 201 (1992). This is a permissive rule. However, under Rule 201(d), a trial court is required to take judicial notice of an adjudicative fact if requested by a party and supplied with the necessary information. *Id.* Plaintiff made no such offer. We find no prejudicial error.

It is also noted by this Court that plaintiff, as the party claiming an interest in the pension plan, had the burden of proof as to the value of the pension plan on the date of the parties' separation. *See Atkins v. Atkins*, 102 N.C. App. 199, 401 S.E.2d 784 (1991). This same burden of proof applies whether we are dealing

with marital debts or marital assets. Also, in *Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990), this Court stated:

> The requirements that the trial court (1) classify and value all property of the parties, both separate and marital, (2) consider the separate property in making a distribution of the marital property and (3) distribute the marital property, necessarily exist only when evidence is presented to the trial court which supports the claimed classification, valuation, and distribution.

With this background, the burden was clearly on plaintiff, as the one seeking an interest in defendant's pension plan, to provide the trial court with evidence of the pension plan's value as of the date of separation. The record indicates that both parties submitted to pretrial depositions. In addition, defendant took the stand and was available for questioning as to the value of the pension plan. However, at no point were any questions asked as to the specifics of defendant's participation in the plan. Also, plaintiff had the opportunity to seek the necessary information as to defendant's participation in the pension plan from Southern Bell, but again plaintiff failed to pursue this opportunity.

We see no reason to remand this case on the basis that the trial court failed to make a specific finding as to the present discount value of the defendant's pension plan when it was plaintiff who failed to provide the trial court with the necessary information. "[R]emanding the matter for the taking of new evidence, [as to the value of the pension plan] in essence granting the party a second opportunity to present evidence, 'would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing.'" *Miller*, 97 N.C. App. at 80, 387 S.E.2d at 184 (citation omitted). Under the circumstances, we feel that the trial court did the best it could with the information available. Therefore, the trial court's failure to put a specific value on defendant's pension plan was not error.

[2] The second issue raised by defendant's first assignment of error is whether the trial court erred in making an unequal division of the marital property. There is a statutory mandate in the distribution of marital property that an equal division is equitable. N.C.G.S. § 50-20(c) (Cum. Supp. 1991). However, a trial court may consider all the factors listed in section 50-20(c), and find that an equal division of the marital assets would not be equitable under the

circumstances. *White v. White*, 312 N.C. 770, 324 S.E.2d 829 (1985). The court must make specific findings of fact setting forth the reasons for its conclusion. *Armstrong v. Armstrong*, 322 N.C. 396, 368 S.E.2d 595 (1988). Once the trial court decides that an unequal division of the marital property would be equitable, its decision will only be reversed for an abuse of discretion. *White*, 312 N.C. at 777, 324 S.E.2d at 833.

The trial court in this matter concluded that an equal division of the marital property would not be equitable and made specific findings of fact to support its conclusion. In so doing, the trial court considered all the factors listed in N.C.G.S. § 50-20(c), but gave particular weight to factors 1, 3, 11a and 12. Important to the trial court's decision was the defendant's declining health and inability to work. In addition, the trial court felt it important that the plaintiff had secreted funds, attempted to devalue the marital estate and was less than truthful in much of her testimony. We find the procedure acceptable and see no abuse of discretion.

In *White*, our Supreme Court held that when rulings are committed to the sound discretion of the trial court they will be accorded great deference and will not be set aside unless it can be shown that they were arbitrary and not the result of a reasoned decision. *Id.* Having reviewed the record, we find no evidence that the trial court's opinion was anything but a well reasoned decision and that it did not abuse its discretion.

## II.

[3] Plaintiff's second, third, fifth and sixth assignments of error are all directed to the weight of the evidence. By these assignments of error, plaintiff argues that there was not sufficient evidence to uphold the trial court's determinations that defendant was ill and unable to work and that the plaintiff had hidden and secreted marital assets. Since the distribution of marital property is vested in the sound discretion of the trial court and only reversed for abuse of discretion, this Court will only reverse the trial court's distribution if its decision is unsupported by reason and not the result of competent inquiry. *Beightol v. Beightol*, 90 N.C. App. 58, 367 S.E.2d 347, *disc. rev. denied*, 323 N.C. 171, 373 S.E.2d 104 (1988). Accordingly, this Court will not reverse the trial court's findings of fact on appeal as long as they are supported by competent evidence. *Id.*

ALBRITTON v. ALBRITTON

[109 N.C. App. 36 (1993)]

As to the trial court's finding that defendant was in poor health and unable to work, we are of the opinion that this finding was supported by competent evidence. At the hearing, the defendant testified that he suffered from dizzy spells and also had recurring pain in his leg and side. At the time of the hearing, defendant. was under medical evaluation and was awaiting the results of recent tests. Defendant's own testimony was corroborated by his daughter who testified that she had observed a deterioration in her father's condition and she had often taken him to the doctor. Plaintiff contends that defendant's dizziness and other health problems are the result of abuse of alcohol. However, the trial court after hearing and weighing all the evidence concluded that defendant was disabled and we will not disagree with that finding on appeal.

In a similar manner, plaintiff argued in her brief that there was not sufficient evidence to find that she had secreted and hidden marital assets. The trial court engaged in a very painstaking and detailed analysis of plaintiff's financial status before it concluded that plaintiff was secreting funds for the purchase of her post-marital home. At the hearing, plaintiff initially testified that she did not use any of her own money in the purchase of her post-marital home. However, when plaintiff later resumed the stand, she explained that she had been confused by the earlier questions and that she had actually paid for the $12,000 needed to purchase the home from her checking account, which she closed before separation, a former IRA account and a loan from her sister. In light of this recanted testimony, and other contradictions in the record too numerous to mention, we hold that the trial court did not commit reversible error in holding that plaintiff had secreted and hidden marital assets. As a result, plaintiff's second, third, fifth and sixth assignments of error are overruled.

III.

[4] Plaintiff's final assignment of error raises the issue of whether the trial court committed reversible error in considering the defendant's exhibits since they were not properly moved into evidence. At the conclusion of his case, defendant's counsel stated he wanted "to make certain that all of my exhibits have been property [sic] marked and offered." Plaintiff argues that this was not sufficient to introduce the defendant's exhibits into evidence and that she has been prejudiced since the trial court's valuation of the marital property came straight from the defendant's exhibits.

Although we disagree with plaintiff's argument that this method is not sufficient, we need not reach the issue. Rule 10(b) of the North Carolina Rules of Appellate Procedure requires that for issues to be preserved for appeal, a party must make a timely request, objection or motion. At the very least defendant's counsel's statement was enough to put plaintiff on notice that he was attempting to offer the exhibits into evidence. However, plaintiff made no objection. Plaintiff's failure to properly preserve the issue prevents her raising the issue for the first time on appeal. *See In re Will of King*, 80 N.C. App. 471, 342 S.E.2d 394, *disc. rev. denied*, 317 N.C. 704, 347 S.E.2d 43 (1986). Plaintiff argues that the procedure happened so quickly that she did not have an opportunity to object. Nothing in the record nor in the argument suggests any reason why counsel could not make a timely objection or if unable to speak, some signal. This issue was not preserved at trial and is not properly before us now.

As to the rest of plaintiff's assignments of error these are deemed abandoned as per Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure as they were not addressed in the brief. Similarly, defendant's first and second cross-assignments of error, are also deemed abandoned for having not been addressed in defendant's brief. For its third cross-assignment of error, defendant argues this Court committed reversible error in denying defendant's motion to dismiss for failure to comply with the Rules of Appellate Procedure. Although we appreciate defendant's familiarity with the Rules of Appellate Procedure, we see no need to revisit our previous decision especially in light of the fact that this matter has been resolved in favor of the defendant.

For the foregoing reasons the order of the trial court is

Affirmed.

Judges JOHNSON and COZORT concur.